**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**JASMINA ISAKOVA #A241-926-500** — **CIVIL ACTION NO. 26-1481 SEC P**

**VERSUS** — **JUDGE EDWARDS**

**SOUTH LOUISIANA ICE PROCESSING CENTER ET AL** — **MAGISTRATE JUDGE PEREZ-MONTES**

## MEMORANDUM RULING AND ORDER

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Jasmina Isakova, an immigration detainee at the South Louisiana ICE Processing Center in Basile, Louisiana.

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is GRANTED.

## I. Background

Isakova is a 22-year-old native and citizen of Uzbekistan. ECF No. 1 at 4; ECF No. 8 at 2. She entered the United States without inspection near Eagle Pass, Texas, on March 6, 2022. She was apprehended shortly thereafter. According to DHS's Form I-213, she was issued a Form I-94 and released as an alternative to detention pursuant to parole under 8 U.S.C. § 1182(d)(5)(A). ECF No. 8 at 2; ECF No. 8-3 at 2. The Government states that her release was necessitated by detention-capacity constraints. ECF No. 8 at 2. The Government did not submit the referenced Form I-94.

Isakova alleges that she remained at liberty in the United States for more than four years. She alleges that she complied with all reporting and supervision requirements during that period. ECF No. 1 at 4; ECF No. 1-2 at 2-4. During that time, she lived with her family in the New York area, obtained a New York learner permit, maintained employment, filed federal and state tax returns, received medical care, and prepared to marry. ECF No. 1 at 4, 13-14.

On April 21, 2026, days before her scheduled wedding, ICE arrested Isakova at home. Isakova alleges that officers arrested her without a warrant or opportunity to consult counsel or present documentation. *Id.* at 15-16. The Government states that officers observed Isakova approaching the front of the residence, confirmed her identity, and arrested her pursuant to a Form I-200 administrative warrant. ECF No. 8 at 5; ECF No. 8-4 at 1.

That same day, DHS issued a Form I-286 custody determination invoking § 236 and advising Isakova that she could request review of the custody determination by an immigration judge. ECF No. 8-5. DHS subsequently issued a new Notice to Appear ("NTA"), dated April 22, 2026, charging Isakova as removable and placing her in removal proceedings. ECF No. 8 at 2; ECF No. 8-1. The Government contends that service of the new NTA terminated Isakova's parole and returned her to the custody from which she had been released. ECF No. 8 at 3. It does not contend her parole expired or was otherwise terminated before her April 21 arrest.

Isakova challenges her detention and alleges, among other things, that her arrest violated the Fourth Amendment and 8 U.S.C. § 1357; that her detention is

governed by § 1226(a); and that DHS violated the Fifth Amendment by re-detaining her after more than four years at liberty without an individualized hearing. She also asserts claims concerning access to counsel, medical care, transfer, and potential removal.

The Government maintains that § 1225(b)(2)(A) governs Isakova's detention because her temporary parole did not constitute an admission or alter her status as an applicant for admission. It argues that the references to § 236 in the Forms I-200 and I-286 do not change the governing detention authority and that Isakova's parole created no entitlement to continued liberty. The Government further contends that her detention has not become unconstitutionally prolonged because it remains tied to active removal proceedings, she has obtained counsel, and the Government has not delayed those proceedings to extend her detention. ECF No. 8 at 4.

Isakova's removal proceedings remain pending. When the Government filed its brief, Isakova's individual merits hearing was scheduled for September 16, 2026. ECF No. 8 at 2. The EOIR Automated Case Information System reflects that her internet-based individual hearing is now scheduled for September 29, 2026.

## II. <u>Law and Analysis</u>

Under 8 U.S.C. § 1225(a)(1), a noncitizen who is present in the United States but has not been admitted is deemed an applicant for admission. Section 1225(b)(2)(A) generally requires the detention of an applicant for admission who is not clearly and beyond a doubt entitled to be admitted while removal proceedings are pending. Unlike

§ 1226(a), § 1225(b)(2)(A) does not authorize release on bond. *Jennings v. Rodriguez*, 583 U.S. 281, 297–300 (2018).

*Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), forecloses any argument that Isakova is detained under the incorrect statutory provision. That conclusion, however, does not resolve Isakova's constitutional claim.

As this Court has frequently recognized, the question of whether Congress authorized detention under § 1225(b) is analytically distinct from whether the Government may revoke a liberty interest without affording constitutionally adequate process. *See Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La. Mar. 5, 2026); *Kilic v. Acuna*, 1:25-CV-01928, 2026 WL 1652575, at *2 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. April 29, 2026); *Andrade-Cunalata v. Wyatt*, No. 3:26-CV-01155 (W.D. La. July 16, 2026).

**Procedural Due Process**

Isakova's procedural due process claim is separate and apart from whether she is ultimately subject to mandatory detention under § 1225(b). *Id.* The question is whether, after the Government permitted her to remain at liberty in the United States for more than four years, the Fifth Amendment required some form of individualized process before that liberty could be revoked. *See Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7, *9 (W.D. Tex. Oct. 21, 2025).

Neither *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020), *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor *Buenrostro-Mendez* forecloses Isakova's

constitutional claim. As this Court observed in *Diallo*, those decisions address Congress's statutory detention authority and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts consider: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interests, including the burdens of additional procedures.

**1. Private Interest**

"The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem*, 5:25-CV-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Although *Buenrostro-Mendez* establishes that § 1225(b) authorizes mandatory detention, it does not eliminate the liberty interest that developed after the Government affirmatively released Isakova and knowingly permitted her to remain at liberty in the United States for more than four years before re-detaining her.

Unlike cases involving individuals who lived in the United States without the Government's knowledge until their eventual apprehension, *see Sosnava-Rodriguez v. Ortega*, 26-50183, 2026 WL 1906557, at *15 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated*, 2026 WL 2014647 (5th Cir. July 10, 2026), Isakova's re-

detention did not result from the Government's first discovery of her presence. In fact, DHS knew of her presence, as Isakova was apprehended shortly after entering the United States in March 2022 and was affirmatively released by DHS on parole as an alternative to detention. The Government's own record states that she was paroled because of detention-capacity constraints. ECF No. 8-3 at 2. She thereafter remained at liberty for more than four years before ICE arrested her on April 21, 2026. Nothing in the Response indicates that Isakova absconded, violated the conditions of her release, committed a crime, or otherwise engaged in conduct prompting DHS to reverse its prior decision permitting her to remain in the community.

During her four years at liberty, Isakova, who is 22 years old, lived with her family and established significant ties to the community. She maintained employment, filed tax returns, and was preparing to marry. She and her fiancé obtained a marriage license on April 15, 2026, and scheduled their wedding and reception for May 1, 2026, with approximately 200 guests. ECF No. 1 at 13-14; ECF Nos. 1-8, 1-9, 1-11. Days before the wedding, ICE re-detained her, so her wedding was canceled. *Id.*

Thus, the first factor strongly favors Isakova.

**2. Risk of Erroneous Deprivation**

The second *Mathews* factor likewise favors Isakova. The Government re-detained her without providing advance notice of the proposed termination of her parole, an opportunity to respond, or any individualized process addressing the revocation of the liberty she had exercised for more than four years. Notably, DHS

arrested Isakova on April 21, 2026, pursuant to a Form I-200 administrative warrant and issued a Form I-286 custody determination that same day. ECF Nos. 8-4, 8-5. The I-286 invoked § 236 and advised Isakova that she could request review of the custody determination by an immigration judge. ECF No. 8-5. The new NTA, however, is dated April 22, 2026—after her arrest. ECF No. 8-1. The Government contends that service of that NTA terminated Isakova's parole and returned her to § 1225(b) custody. Thus, DHS re-detained Isakova before issuing the document that allegedly terminated her parole. The subsequently issued NTA could not have provided advance notice. Moreover, after advising Isakova that she could obtain immigration judge review under § 236, the Government now maintains that § 1225 governs and an immigration judge lacks authority to review her custody determination.

The Government argues that no additional procedures are constitutionally required because Isakova is subject to mandatory detention under § 1225(b), and has no right to release on bond. ECF No. 8 at 3-4. But Isakova's procedural due process claim does not depend on whether she ultimately is entitled to a discretionary bond hearing under § 1226(a). Instead, she contends that the Government violated the Fifth Amendment by revoking the liberty it had permitted her to enjoy for years without first providing constitutionally adequate process.

At a minimum, notice of the reasons for re-detention and an opportunity to contest the factual issues surrounding the revocation of Isakova's liberty would provide meaningful procedural protection while leaving the ultimate statutory

detention determination intact. The Due Process Clause requires only such procedural protections as the particular situation demands. *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Because Isakova received no individualized process before that liberty was revoked, the risk of erroneous deprivation weighs in favor of requiring additional procedural safeguards.

**3. Government's Interest**

The Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those individuals whom Congress has made subject to § 1225(b).

Providing constitutionally adequate procedures before revoking previously granted liberty does not undermine Congress's determination that applicants for admission are generally subject to mandatory detention. Rather, it requires only that the Government afford constitutionally adequate procedures before withdrawing liberty it has previously conferred. Due process protections remain even when Government authorities have discretion to revoke supervision. *See Mendoza v. Noem*, 823 F. Supp. 3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26-CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

Balancing the three *Mathews* factors, the Court concludes that the Government violated Isakova's procedural due process rights by re-detaining her without affording any individualized process after permitting her to remain at liberty for more than four

years. It re-detained her before issuing the NTA that the Government now contends terminated her parole, without advance notice or any opportunity to respond.

This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory question of detention authority, but not the separate constitutional question of whether the Government may revoke an established liberty interest without affording due process. It is also consistent with this Court's prior decisions distinguishing *Sosnava-Rodriguez*.

Because the Court concludes that Isakova is entitled to relief on her procedural due process claim, it need not address her remaining arguments.

## III. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. The Government is ORDERED to release Isakova from custody within seven (7) days, subject to the conditions of supervision previously imposed or such reasonable conditions as DHS may lawfully impose. The Government must provide advance notice of her release to counsel.

IT IS FURTHER ORDERED that the parties file a joint notice of compliance with this Order within 24 hours of Isakova's release.

THUS ORDERED AND SIGNED in Chambers this 17th day of September, 2026.

**JUDGE JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT COURT**